Justin C. Frankel (JF-5983)
Jason A. Newfield (JN-5529)
FRANKEL & NEWFIELD, P.C.
585 Stewart Avenue - Suite 312
Garden City, New York 11530
(516) 222-1600
Attorneys for Plaintiff

### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------------

Joseph Mastrangelo                             :
                                               :
                Plaintiff,     :
                                               :
      - against -                             :       ECF
                                               :
LIFE INSURANCE COMPANY                         :
OF NORTH AMERICA,                              :       **COMPLAINT**
                                               :
                                               :
                Defendant.     :

------------------------------------------------------------

Plaintiff, JOSEPH MASTRANGELO, by and through his attorneys, FRANKEL & NEWFIELD, P.C., as and for his Complaint against Defendant LIFE INSURANCE COMPANY OF NORTH AMERICA hereby sets forth the following:

### THE PARTIES

1. At all times hereinafter mentioned, Plaintiff Joseph Mastrangelo, was and still is a resident of the State of Virginia.

2. Upon information and belief, at all times hereinafter mentioned, Defendant LIFE INSURANCE COMPANY OF NORTH AMERICA is a Pennsylvania corporation, and a subsidiary of CIGNA, with its principal place of business at Two Liberty Place, 1601 Chestnut Street, Philadelphia, Pennsylvania. Defendant LINA is therefore a citizen of the State of Pennsylvania, pursuant to 28 U.S.C. § 1332(c)(1).

## JURISDICTION AND VENUE

3. Jurisdiction of the Court is based upon 29 U.S.C. §§ 1132(e)(1) and 1132(f), which give the District Courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan. Jurisdiction is also founded on 28 U.S.C. §1331 because this action arises under 29 U.S.C. §1001 et. seq. (Employee Retirement Income Security Act of 1974, hereinafter "ERISA").

4. Venue in the Eastern District of Pennsylvania is appropriate because Defendant conducts business and is subject to personal jurisdiction in this judicial district and maintains contacts in this judicial district sufficient to subject it to personal jurisdiction.

5. Pursuant to 28 U.S.C. §1391(a)(1) and §1391(c), this action is properly venued in the Eastern District of Pennsylvania.

## FACTS

6. At all times hereinafter mentioned, Plaintiff was an employee of Lockheed Martin Operations Support, Inc. ("Lockheed Martin"), employed as a Systems Engineer/ IT Senior Manager, and was a participant and/or beneficiary under the LTD Plan.

7. The short term disability ("STD") and long term disability ("LTD") Plan is an employee welfare benefit plan specifically covered under ERISA, 29 U.S.C. 1002(2)(A).

8. At all times material herein, LINA made and/or participated in making all benefits decisions under the STD and LTD Plan.

9. During Plaintiff's employment with Lockheed Martin Defendant LINA issued a short term and long term group disability income policy (hereinafter the "Policy").

10. At all times hereinafter mentioned, said disability policy of insurance was issued for the benefit of certain eligible employees in exchange for the payment of premiums by Lockheed Martin and/or the employees.

11. At all times mentioned herein, Plaintiff was and is an employee eligible for disability benefits and an insured under the Policy. Said policy provided, among other things, that disability insurance payments will be made to Plaintiff in the event that he becomes disabled due to an injury or sickness. Disabled is defined as, "The Employee is considered Disabled if, solely because of injury or sickness, he or she is unable to perform all the material duties of his or her regular job; and unable to earn 60% or more of his or her indexed covered earnings."

12. On or about April 25, 2016, during the period within which his coverages were in full force and effect, and while Plaintiff was an eligible employee, Plaintiff became disabled within the meaning and pursuant to the terms of his coverage.

13. As of this date, Plaintiff continues to be disabled in that he is unable to perform, on a sustained basis, his prior occupation or any occupation, as that term is defined under the subject policy.

14. Plaintiff's disability is caused by, among other things, his numerous co-morbid conditions including type 1 diabetes, peripheral vascular disease, coronary artery disease, coronary atherosclerosis, acute myocardial infarction resulting in a quadruple bypass, acute renal insufficiency, chronic kidney disease, essential hypertension, hyperlipidemia, hypothyroidism, degenerative disc disease, glaucoma,

proliferative diabetic retinopathy, diabetic macular edema, numerous lower extremity amputations including a left below the knee amputation, and the resulting impact of these conditions on his functional ability.

15. Plaintiff filed a timely claim, cooperated with Defendant LINA in all respects, provided proper proof of loss in support of his claim, and otherwise complied with the policy terms and conditions regarding the filing and maintenance of a claim.

16. Pursuant to the policy, LINA was obligated to commence the periodic payment of monthly long term disability benefits to Plaintiff following the expiration of his elimination period.

17. Defendant denied Plaintiff's claim for short term disability benefits on or about June 15, 2016.

18. Plaintiff filed an initial appeal of Defendant's adverse determination on or about September 30, 2016, for his short term and long term disability benefits.

19. By letter dated January 18, 2017, Defendant informed Plaintiff that his appeal had been denied and that Defendant upheld its previous decision to deny the claim.

20. Despite Plaintiff's continued total disability, Defendant has denied all disability insurance benefits as of June 15, 2016 to Plaintiff and continues to refuse to pay benefits pursuant to the policy, although payment thereof has been duly demanded.

21. Said refusal on the part of Defendant is a willful and wrongful breach of the policy terms and conditions.

22. Monthly benefits to Plaintiff are continuing to be due and payable by Defendant with the passage of each month.

23. Defendant is a conflicted decision maker because it has a financial interest in the outcome of Plaintiff's claim, and the payment of any such benefits comes at the financial expense of Defendant.

24. Defendant's structural conflict of interest pervaded its handling of Plaintiff's claim, resulting in a number of procedural irregularities in its claim handling, including but not limited to: the failure to consider the impact of Plaintiff's physical conditions and limitations on his ability to perform all of the essential duties of his regular or any occupation; the refusal to consider Plaintiff's credible subjective complaints upon his inability to work; the reliance upon a selective review of medical records to reach a result oriented claim determination; the failure to utilize appropriately qualified and unbiased medical personnel to reach decisions and/or render opinions on levels of impairment; the biased and flawed vocational consideration of Plaintiff's claim; the failure to perform a fair and neutral evaluation of Plaintiff's medical condition and associated restrictions and limitations; and other biased claim handling conduct.

25. Defendant's claim handling resulted in numerous violations of 29 CFR § 2560.503-1, et seq.

26. Defendant's claim handling failed to provide Plaintiff with a full and fair review of his claim.

27. Defendant's claim handling demonstrates a bias against Plaintiff's claim due to its impact on Defendant's financial situation and frustrated Plaintiff from receiving a full and fair review of his claim.

28. Defendant has a history of biased claim administration of ERISA disability claims, and has undertaken no efforts to ensure that its claim handling is not influenced by its financial conflict of interest.

29. The California Department of Insurance has investigated LINA's claim handling and issued a report that details how LINA has improperly denied claims. (Exhibit "A").

30. The California Department of Insurance determined that LINA:

   a. Failed to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under its insurance policies;

   b. Failed to effectuate prompt, fair and equitable settlements of claims in which liability had become reasonably clear;

   c. Failed to represent correctly to claimants, pertinent facts or insurance policy provisions relating to a coverage at issue;

   d. Compelled insureds to institute litigation to recover amounts under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds, when the insureds have made claims for amounts reasonably similar to amounts ultimately recovered;

   e. Attempted to settle a claim by making a settlement offer that was unreasonably low;

   f. Failed to include a statement in its claim denial that, if the claimant believes the claim has been wrongfully denied or rejected, he or she may have the matter reviewed by the appropriate State insurance agency/department.

31. Underlying these findings were the facts that LINA:

a. Applied arbitrary deadlines for submission of proof of claim after the notice of claim had been denied. If the proof was not available or received within the designated period then the claim was denied and pushed to the appeal process;

b. Failed to request medical records prior to making a claim determination;

c. Failed to perform any functional testing or peer review of medical records on file while utilizing functional test results as the guidepost for medical information necessary to the entitlement to benefits;

d. Failed to consult with a health care professional who had appropriate training and experience in the field of medicine involved in the medical judgment;

e. Improperly utilized attending physician's statements to support its denial of disability while not clarifying with the attending physician why he/she was indicating continuing disability;

f. Failed to perform a transferable skills analysis and labor market survey to identify alternate occupations appropriate to claimants under an "any occupation" policy;

g. Ignored substantial information that was introduced after the claim denial;

h. Failed to investigate the course and nature of a claimant's disabling condition as it related to the first date missed from work and the end of the waiting period;

  i. Assumed that alternate employers could make an accommodation for a claimant, but never provided any documentation to support its assertion;

  j. Denied claims based upon a "national economy" definition when it was supposed to evaluate a claimant's disability from his/her own occupation;

  k. Failed to consider the course and nature of an illness prior to denying benefits;

  l. Ignored the medical assessments of its own medical health professionals, who determined that the claimants were disabled, and denied benefits;

  m. Removed several disabling health conditions from a claimant's history on file prior to requesting an internal health care professional to review the claimant's file;

  n. Ignored correspondence received after the initial denial that reasonably required a response;

  o. Failed to clarify a claimant's restrictions and limitations with the attending physician who was indicating the claimant was disabled; and

  p. Failed to provide complete information in the file to the health care expert performing a peer review of the medical file.

  32. The California Department of Insurance conducted a follow up examination regarding the market conduct examination of LINA of June 20, 2006 and issued a report that details how LINA has continued to improperly deny claims. (Exhibit "B")

33. This follow up examination determined that LINA:

a. Failed to utilize the proper medical specialist to review and opine on the claimants' medical records;

b. Failed to perform an FCE, an IME, or cognitive testing when the claimant's restrictions and limitations were not clear;

c. Failed to obtain complete job descriptions and transferable skills analysis;

d. Obtain or consider all medical records relating to the claimant's disability;

e. Obtain or consider complete records relating to an award of workers compensation benefits;

f. Obtain or consider complete social security disability income records relating to an award of benefits;

g. Determine an appropriate estimate state disability income offsets and verify the actual benefits received in a time manner and instead applied the maximum state disability income offset;

h. Failed to address correspondence.

34. In 2013, CIGNA/LINA agreed to a regulatory settlement, wherein it agreed to take certain corrective actions, all related to the Market Conduct Survey which had been conducted.

35. Defendant is held to "higher than marketplace" standards of quality, as espoused in Met Life v. Glenn, 128 S.Ct. 2343 (2008).

36. Defendant was required to discharge its duties "solely in the interests of the participants and beneficiaries of the plan."

37. Defendant violated the higher than marketplace standards of quality in its handling of Plaintiff's claim.

38. Plaintiff has exhausted all administrative appeals and remedies to the extent they exist pursuant to the conditions of the employee benefit plan.

39. By reason of the foregoing claims conduct, Defendant failed, by operation of law, to establish and follow reasonable claims procedures that would yield a decision on the merits of his claim. 29 C.F.R. §2560.503(l).

40. Because Defendant failed to satisfy the minimum procedural safeguards set forth in 29 C.F.R. §2560.503-1, Defendants' adverse benefit determination is not entitled to any judicial deference.

41. Defendant willfully failed to comply with ERISA regulations.

42. Plaintiff continues to be totally disabled, and monthly benefits are due and owing to him with the passage of each month.

43. Plaintiff is entitled to a de novo review.

**WHEREFORE**, Plaintiff Joseph Mastrangelo prays that he may have a declaratory judgment herein declaring the rights and other legal relations of the parties hereto regarding the matters set forth in this Complaint specifying the following:

a) Plaintiff is disabled pursuant to the language and within the meaning of the subject policy of insurance issued by Defendant in that he is unable to perform the duties of his occupation, or any occupation that he was qualified by virtue of his education, training or experience.

b) Defendant is obligated to pay continuing benefits to Plaintiff pursuant to the policy and shall pay all benefits in arrears due and owing since the denial of benefits, plus interest;

c) Defendant's obligation to pay benefits to Plaintiff shall continue as long as he remains totally disabled, subject to the applicable benefit period in the policy;

d) Plaintiff shall be afforded appropriate equitable relief to redress Defendant's violation of the terms of the Policy, and/or any other appropriate relief, as provided for by CIGNA v. Amara, 131 S.Ct. 1866 (2011).

e) Pursuant to ERISA §502 et. seq., Plaintiff shall be entitled to recoup his attorney's fees, as well as all other costs and disbursements of this action, along with pre-judgment and post-judgment interest;

f) Plaintiff may return to this Court, upon motion, to seek further declaratory relief in the event that it becomes necessary; and

g) Such other and further relief as the Court may deem just and proper.

Dated: Garden City, New York
       January 23, 2017

By: /s/
Justin C. Frankel (JF-5983)
Jason A. Newfield (JN-5529)
FRANKEL & NEWFIELD, P.C.
585 Stewart Avenue - Suite 312
Garden City, New York 11530
(516) 222-1600
Attorneys for Plaintiff